## *546] *Armand Caignett *against* Guilbaud Rouge and Compagne.

### S. C. 2 Dall. 234.

A Frenchman, who has never assented to the French republic, established on the 21st September 1792, and leaving the French West Indies, and set-tling in the United States, buying lands therein, &c. is not within the 12th article of the consular convention between France and America.

THE plaintiff instituted a foreign attachment against the defendants to January term 1794, and obtained judgment in September term following. A *scire facias* was brought against Andrew Pettit and Andrew Bayard the garnishees, to January term last. And a motion was now made, to dismiss the original suit, under the 12th article of the consular convention, agreed upon between the United States of America and France, at Versailles, on the 14th November 1788. (2 Cong. Laws 357.)

The motion was founded on the deposition of John Carteaux, who swore that the plaintiff and defendants were French citizens; that the parents of the former were planters in that part of the island of St. Domingo, which was possessed by the French; that the plaintiff and his sister were entitled to a large real estate there; and that in 1791 and 1792, he acted in the character of a suppleant in that island.

On the part of the plaintiff, several counter affidavits were produced, shewing that he came into the United States on the 6th May 1792; that the witnesses knew him several years before the establishment of the French republic, on the 21st September 1792, and since; that the plaintiff had uniformly dissented from the said republic, and had frequently expressed his unequivocal sentiments to that effect; that he had bought lands near Frankford, in the county of Philadelphia, and had settled thereon with his family; that during the course of the

[Caignett *v.* Rouge et al.]

last year, he had gone to Leogane, and the French commandant had declined making him do duty there, considering him as a citizen of the United States; and that application had been made in April 1795, to M. Petrié, the French consul, to take jurisdiction of this cause, which he had refused, the plaintiff having taken the oath of allegiance to Pennsylvania. A certificate of Hilary Baker, esq. one of the aldermen of the city of Philadelphia, was also produced, shewing that the plaintiff had taken such oath before him, on the 5th September 1793.

The counsel for the plaintiff made two points.   1. If both plaintiff and defendants are French citizens, the French consul has no jurisdiction over foreign attachments.   2. That here the plaintiff is no French citizen, nor ever was a citizen of that republic.

On the first point, the words of the 12th article are, "all * "differences and suits between the subjects of the ["*547 "most Christian king in the United States, or between "the citizens of the United States within the dominions of "the most Christian king," &c.   Now in the former part of the clause, "subjects" are the last antecedent.   The plaintiff and defendant must be within the United States, to give jurisdiction to the consul.   Here the defendants were not within the United States when the suit originated, and the power of the consul could not reach beyond his district.   How could the consul begin the action, or how give judgment, when the defendants lived in the French West Indies?   How could he proceed against American citizens garnishees, or how try their plea of *nulla bona?*   Could he convene a jury before him?   What process would he use?

But suppose these difficulties got over, how could he enforce his sentence?   Conusance of pleas is never to be allowed, unless the judgment can be enforced.   2 Vent. 362, 363.   A consul cannot claim privilege in his own case.   3 Bl. Com. 298.   To carry into full effect the provisions of this convention, congress have passed an act on the 14th April 1792, respecting wreck, &c.   2 Cong. Laws. 70.

The duty of a prince is to see justice done to his subjects by proper judges.   Vattel lib. 1, c. 13, § 161, 163, 167.   But by the construction contended for, the only tribunals by which full justice could be done to the citizens of France, are taken away, and no effectual substitute provided.

The title of the convention shews, that it was merely designed to define the consular jurisdiction.   In the case of Langlois *v.* Truil, determined by Mr. President Biddle, in Philadelphia, it was held, that the United States' courts might proceed in all such cases, unless suit had been brought before the consul, or unless he would claim jurisdiction.   His expressions were, "if the French consul will certify that the "parties are French citizens, and that he will act as a judge

[Caignett *v.* Rouge et al.]

"between them, we will not assume the jurisdiction.    But it "never could have been the object of the convention to pre-. "vent justice being done."

[On the second day of the argument, the claim of M. Le Tombe, consul general of France, was filed, impowering M. Du Ponceau to claim of the court, the execution of the con- sular convention.]

As to the second point, it is essential to all good govern- ment, that the majority shall rule.    A minority who volun- tarily continue within the society, must submit to the voice of the larger body.    A civil war breaks the bonds of society and government, and produces two independent parties, who acknowledge no superior, and every man may choose his own \*548] side.    Vatt. lib. 3, \*c. 8, § 293, 295.    The minority have individually, an unrestrainable right to remove with their property into another country, and a reasonable time for that purpose ought to be allowed.    None are sub- jects of the adopted government, who have not freely as- sented to it.    Dallas, 58.    The Pennsylvania act of assembly of 13th March 1789, (2 Dall. St. Laws, 677) does away all tests, except in the cases of officers and foreigners.    It is not insisted, that the plaintiff's taking the oath of allegiance before alderman Baker, makes him an American citizen.    But it in- dubitably shews *quo animo* he came into the United States. His purchasing of lands here, his settlement with his family thereon, and his unequivocal declaration of his political opinions, prove his pointed determination not "to be distin- guished by the honorable appellation of a French citizen," according to the language of the advertisement of the French consul dated 12th February 1794, "calling on the French re- "publicans in America, to repair to the consulate, to produce "their passports, to enter their names, and to certify the "births in their families," &c.

Every man has a right to migrate to another country, when he does not thereby expose the safety of his own country. Vatt. lib. 1. c. 13 § 220.    A man ceases to be a citizen by re- moving with his family and property to another country. Heineccieus' Univ. Law, 220 § 230.

The fourth article of the American confederation shews, that the word "citizen" may mean an inhabitant, without being entitled to all the privileges of a subject.    The same thing appears by Vattel, lib. 1 c. 13 § 213.

So Johnson's Dictionary voc. citizen shews that it is used in the double sense of a "freeman" and "inhabitant."    It is therefore presumed that the word "citizen" in the 12th arti- cle of the consular convention (which was agreed to about one year after our confederation) was merely intended in the sense of "inhabitants."

It has been confidently said, that in a state of society a man must necessarily be a citizen of some country.    But in the

[Caignett *v.* Rouge et al.]

extensive sense of the term, this position certainly cannot hold. It is clear, that a man may expatriate himself; and if he remove to another state or kingdom with an intention of living therein and becoming a citizen, and the laws of the country to which he removes, require residence for a certain period there as an indispensible ingredient in the formation of citizenship, he cannot be considered as a free citizen of either state or kingdom.

*E contrà,* for the defendants, it was insisted, that the whole structure of the 12th article in question, meant to include dif*ferences and suits in the United States, between the subjects of France. The great object was, that the [*549 citizens of either empire should not be drawn before a foreign tribunal; and it was the wish of both nations to preserve their judicial authority over their own people. The words of the article are general and very comprehensive; and if a citizen of the United States thinks proper to acknowledge the consular jurisdiction, by entering into a stipulation before the proper officer, he must abide the consequences. Forms of process would not be wanting in such a case, national faith must be preserved.

Foreign attachments are *in rem,* and when special bail is put in, they are dissolved. The suit then would be between French citizens in the United States. The same objection as to the consul's cognizance failing, because he cannot enforce his decree, would equally apply to controversies between two or more states, under the second section of the third article of the present constitution of the United States, since no method is thereby pointed out of enforcing the sentences of the judiciary in such cases.

No argument can be founded on the application to the French consul in April 1795. Judgment had then been entered in the attachment, a *scire facias* was depending against the garnishee, *sub judice lis fuit.* It would have been indecent in the consul to interpose at that period, even admitting, that his jurisdiction was clearly ascertained. It was more proper for him to rely on the justice of this court, confiding in a faithful fulfilment of the treaty. On being pressed however, the consul has now filed his claim.

But it must be conceded, that the privilege of exemption from suits in the United States' courts belongs to French citizens, as individuals; and any one may claim it, without the interference of the consul. A strong inconsistency is obvious in the plaintiff's conduct. He asked a decision of the French consul five months ago; he now disclaims his jurisdiction, and contends that he is no French citizen.

2d, There is nothing to shew that the plaintiff is not a French citizen. It is clear, that though the form and constitution of a government be changed, yet a treaty concluded with the nation, during the former organization of their polit-

[Caignett v. Rouge et al.]

ical system, still remains binding on all the parties to it. Vattel, lib. i. c. 12.

The emigration of the plaintiff did not alter his character, as a citizen of France. It seems admitted, that he did not come into Pennsylvania, in order to change his country, absolutely, and at all events. His dislike to the pure democratic government of France, has sprung up since his arrival *550] here. He sus*tained the important character of a suppleant in St. Domingo in 1791 and 1792, under the democratic part of the Fayette limited monarchy. Why does not the plaintiff now file his affidavit, that he is not a French citizen? It looks like subterfuge.

[Here the plaintiff being in court, offered to take the affidavit proposed; but was prevented by the court.]

The Pennsylvania act of 13th March 1789, was founded on the 42d section of the former plan or frame of government of this commonwealth; and the 4th section of that act expressly directs, that nothing therein shall alter or affect that section of the old constitution. But this bond of union ceased on the 2d September 1790, when the new constitution was formed by the people of this state. The power of establishing an uniform system of naturalization is now vested in the congress of the United States, by the 8th section of the 1st arti-. cle of the constitution thereof; and the people of this commonwealth, by adopting that constitution, have bound themselves, that their laws shall be conformable thereto. When the congress therefore passed their naturalization act of the 26th March 1790, and directed that the oath of allegiance should be taken in a court of record, the act of assembly of 13th March 1789, was virtually repealed thereby. Under the laws of congress, residence alone will not confer the rights of citizenship. The oath taken before alderman Baker, not being in the mode prescribed by congress, is of no avail.

Notwithstanding all that has been offered, if Caignett was the defendant, instead of the plaintiff in this suit, he would be entitled to the provisions of the convention, though he possessed aristocratical principles. Why, as the plaintiff, should his situation be bettered?

The cases cited from Vattel, are confined to two independent sovereignties, or parties in the same nation. A man must be a citizen of some one country; it would be a solecism in government, to suppose it to be otherwise. This very point has been so determined in the Supreme Court of the United States, between Yost Jansen v. William Talbot, in February term last. One Ballard a citizen of Virginia dissolved his allegiance under a law of that state, but did not become a citizen of France. Talbot was admitted a French citizen, but did not abjure his former allegiance to Virginia. The Supreme Court held, that Ballard continued a citizen of the United States, notwithstanding his oath under the Vir-

[Caignett *v.* Rouge et al.]

ginia act; and he not having become a citizen of any other state or empire, and having been outfitted illegally in Savannah, and without a proper commission, the capture made by him was declared to be illegal.   Judge Patterson in *particular said, that the considering a man as a citizen of the world, was a fanciful idea.                                            [*551

The court took time to advise hereon; and afterwards in the same term, M'Kean C. J. pronounced the unanimous opinion of the judges, that the plaintiff under all the circumstances disclosed to them, could not possibly be considered as a citizen of France, at the time of the commencement of the suit; he was therefore not precluded, by the terms of the 12th article of the consular convention, from bringing his suit in any court of the United States.   The court without giving any opinion on the first point argued,

                              Discharged the motion.

Messrs. Lewis, M. Levy and Moylan, *pro quer.*

Messrs. Ingersoll, Dallas and Du Ponceau, *pro def.*